May it please the court, I'm Kimberly Albrow here on behalf of the appellant Mr. Ashford. I will address the following issues today. Whether the cross-reference to second degree murder was properly considered under the sentencing guideline 1B1.3 as relevant conduct in light of the Horton case and second whether the record was sufficient to support the cross-reference to second degree murder. Let me ask you this, if you're relying on the Horton case, unlike Horton this doesn't deal with 1B1.2A2 but rather 1B1.2A1 because in Horton the offense did not occur on the same date as the other offense did. The offense of conviction was on August the 10th. It occurred on a different date, August 17, than the murder. And that's the distinction between this case and the Horton case. I agree that the facts and the dates that you point out are a distinction but I think that's the core issue in this case that we did that it wasn't analyzed at all under either section of the relevant conduct guidelines. I know the government asserted in their brief that it was under 1B1.2A1 based on the facts of this case but I think the point is Horton was decided about three or four days before the appellant's opening brief was due. No relevant conduct analysis was done in this case so we don't know whether the standard has been met for relevant conduct under 1B1.2A1 or 1B1.2A2. As Mr. Ashford asserted in his brief, it clearly doesn't meet the relevant conduct standard under 1B1.2A2 because the offense of conviction was a felon in possession which is a grouping offense under the 3D1.2 grouping guideline but the underlying cross-reference defense attempted or what turned out to be second degree murder is specifically excluded under that grouping offense. So what would you have us do? Well Mr. Ashford would request that the whole case be remanded for re-sentencing in light of Horton so that he can be assured that the conduct to which he was cross-referenced, which significantly increased his guideline range, can be determined to be relevant conduct or not to be relevant conduct. And you think there's a great deal of doubt about that? I think it wasn't considered at all. I don't think relevant conduct was considered at all. I certainly think that the I think he deserves the consideration of whether or not the conduct meets relevant conduct. As I pointed out in the brief, I think the government noted that the gun, he was found in possession of a gun when he was arrested. It was contemporaneous, 20 minutes to an hour after the shooting occurred, but there was no evidence presented in the record that I could find upon review of that gun was used in the shooting that was used, that was found on Mr. Ashford. So there's a question of whether him being a felon in possession, again it's very difficult, which is why this felon in possession is one of those grouping offenses that is kind of carved out for consideration because if he continually possessed the gun, at what point did the indictment refer to when he was arrested, and that's one of the issues. I didn't mean to interrupt you, but Mr. Ashford testified, did he not? Yes, sir. And the way I read the record, he admitted on the stand that he made a decision to follow Chaplin to the truck and not run away, and he showed that Ashford followed Chaplin back to his vehicle and fired a shot directly at him, striking him in the groin area. On the stand, Ashford admitted to aiming the gun directly at Chaplin. And Mr. Chaplin stated that later, momentarily, Ashford shot him again, this time in the buttocks. Yes, sir, I can't argue against those facts. Those are the facts, but like I said, it may be a fine distinction, but I do think Mr. Ashford is entitled to whether or not the relevant conduct analysis was met in his case. And again, I think the indictment, I think some of the facts as presented in the government's brief show that what they proved and what they could prove was that Mr. Ashford, when he was arrested, was in possession of the gun. Was it the gun used in the shooting? I don't think the facts establish that. But I think, or perhaps this isn't what Judge Hamilton is going to, but it's what I'm going to, A1 treats as relevant conduct all acts and omissions committed or willfully caused that occurred during the commission of the offense of conviction. This, Mr. Ashford appears to, doesn't appear to, he acknowledged that it occurred during the commission of the offense of conviction. Again, I think the way he testified, there could be a conclusion drawn to that, but like I said, I don't think that the gun that he used in the shooting was ever proved to be the gun he was arrested with. Well, the police stopped him when he was leaving the scene, and that they stopped the vehicle a short time later and arrested Ashford seizing the gun. They did seize a gun on him at that time, and I don't deny that it was contemporaneous, like I said, 20 minutes to an hour after the shooting. But again, I don't think it was ever proven, at least on the review of the record, that the gun was the same. Is that, maybe I missed this, but was that an argument that you made in your brief with respect to the identity of the weapon? I thought your argument was with respect to malice on the merits of whether or not we're dealing with murder or voluntary manslaughter. That's, the malice deals with the second argument. I believe in the reply brief, the issue was addressed about whether or not the gun was the same gun. That's a little late, isn't it? Well, it was in response to the government arguing that they had proven relevant conduct under subsection A1 because there was no relevant conduct analysis done at all at the district court level. So when the government, in their brief, responded, I mean, I hate to summarize the facts because I'm sure you're familiar with the facts, but in the opening brief... Well, I think Judge Diaz's question may be going to waiver. You did not argue this in your opening brief. You did not argue the point about the weapon in your opening brief. We didn't argue anything about the A1 relevant conduct. It was in response to the government's assertion that the gun and the relevant conduct was shown under A1, and that would be where the gun was raised. And that was in response to the government's argument about the gun because they raised the issue of he was arrested with this gun, but it was clearly the gun used in the shooting. And I don't think that the facts in the record show that that was ever the connection made. And again, the facts are what the facts are, and it may not be that Mr. Ashford would prevail if this was remanded for resentencing, but I think it's fair for him to have that opportunity given the Horton case and how the Horton case clarified what is relevant conduct as far as a cross-reference and the grouping offenses because that's something that had never been decided in this court before. There was a circuit split on that issue, and he just asked that he be given the opportunity to ensure that the relevant conduct requirement of the cross-reference is met because it did increase his sentencing guideline range from 37 to 46 months. With the cross-reference to second degree murder, his guideline range went to 110 to 120 months. The second issue is whether the record was sufficient to support the cross-reference to second degree murder. And I think the most important issue there is that 18 U.S.C. 3553C requires that when this kind of sentencing issue is addressed, that it be put on the record, the facts supporting that issue. The court did not give a reason on the record why they determined second degree murder rather than first degree murder as recommended in the pre-sentence report was applied or distinguish why the voluntary manslaughter that the defense urged was not used. So it was difficult to determine from the reasons stated on the record exactly why the second degree murder was the cross-reference, but the court repeatedly said the government asked a couple of times for the reason and the court indicated that they would put it in the statement of reasons. But again, 18 U.S.C. seemed to warrant a finding of malice under our case law, particularly when viewed in light of the more extensive description in the PSR, which the court adopted. The reason that I think it's a problem for Mr. Ashford to understand exactly why that cross-reference was used is because the facts in the PSR are clearly, clearly the probation officer goes out, gets facts from all the people that have information about the offense. And I think there were contradictory facts in there. The court didn't distinguish between the facts that indicated that it was more of a voluntary manslaughter situation, a sudden heat of passion, and the facts that would support the second degree murder finding. And in all fairness to Mr. Ashford, he should be able to know why the second degree murder cross-reference applied to him. And all the facts are outlined in the brief and I don't want to go through all the facts with the court because I'm sure you're familiar with them, but they are in his brief at pages 18 to 20, all the facts that would deal with why it could have been, based on just a finding of the facts in the PSR, that it should be a voluntary manslaughter situation. The government pointed to the facts. Obviously, there are facts in there that could support the second degree murder as well. But I think the main issue is that it wasn't put on the record other than it's the facts in the PSR. I don't deny that there was other testimony, but the court didn't rely, at least in open court, on any of the other testimony at the hearing as to why the court went with second degree rather than voluntary manslaughter. If the court had put what it said in the statement of reasons on the record right after the hearing, would you have an argument? I'm not sure that's sufficient either because I believe the only thing that was put in the statement of reasons for the second degree murder was that multiple shots were fired. Whether that rises to the level of being wanton and disregard, reckless disregard for the risk of serious injury, I'm not sure that even that rises to the standard. Well, but his description referenced firing a shot into the crowd, which we have found to constitute malice, have we not? I believe there are cases to that effect, Your Honor. Unless the court has any other questions, Mr. Ashford just requests that his case be remanded for re-sentencing on the issues raised. Thank you. Mr. Daly? May it please the court, Robert Daly on behalf of the United States. I was at a presentation in the last year where a member of this court said that you never get in trouble for keeping things short, particularly at the end of the day of an argument. I'm going to try to see if I can't test that proposition. Two things. One, plain error. She didn't mention it, foes and counsel didn't. Plain error is the governing standard of review on this first issue. I take responsibility that we didn't get it to you sooner, but we got it to you about 11 days beforehand. The cases that they say would preclude you from considering that are cases, one where the standard of review was actually presented for the first time in oral argument. The other case was on a petition for re-hearing. This court has held a number of times that they're not going to have the standard of review governed by the mistakes or overlooking of the standard of review by counsel. So, plain error is, and that's why, of course, there wasn't anything on the record with regard to the first issue. If you look at Horton, it is clear, footnote 17, describes this case. Footnote 17 talks about the fact that if they had prosecuted for the later offense, then it would have fell into possession. It would have then been cross-referenced, the murder that happened on that same day would have been cross-referenced under A1. And clearly, if there were a case that qualifies for A1, it is this one. And that would be, although you mentioned that it may be that that issue was waived as to whether there were facts that proved that the gun was possessed during the shooting, if you look, there's a number of places he testified at the sentencing and admitted facts. But probably just as importantly, in the guilty plea factual basis that was put on the record, at joint appendix pages 41 and 42, there was a discussion about how this case came about. The indictment charges, April 20th, it doesn't limit it to the moment he's caught with the gun in the backseat of the car after the shooting. And then at page, joint appendix page 201, Ashford admits that this is his gun, this is the gun. He talks about, it's earlier on at 206 and 208, he talks about that this is his gun that he totes around every day. So there's no question. I mean, that's under oath. We've got him admitting that. Obviously, remanding it would be a fait accompli. So with regard to that issue, I think it's pretty clear that particularly under plain error, that the first issue is one that this court should not find plain error regarding. With regard to the second issue, the statement of reasons sets forth, the court actually said at the end, I'm going to put it in my statement of reasons. And again, I take responsibility that we only got you that statement of reasons about two weeks ago. But that statement of reasons on the first page gives an explanation of why the judge decided it wasn't going to be attempted first degree murder, but it was going to be attempted second degree murder that would apply because of the malice finding. And in this case, if there were a case where there's malice, two shots at point blank of an unarmed man and then two more shots fired afterwards, and this is all in a parking lot where the testimony was there were children around. In fact, the first victim, Mr. Ashford, Mr. not Ashford, the first victim who was shot testified that he pushed a child away right before he was shot. And so for those reasons, we believe that the court should, this court should affirm the sentence in this case. Can I ask a question? It seems odd that a district judge would say that I'm relying on the findings of fact in the PSR after hearing evidence over the course of, I forget how long, but it was a day and a half. Yes. Seems seems a little strange. Well, she was engaged in the questioning. I mean, she she she questioned, I think, almost every witness and said that she was going to put the reason why she chose second, attempted second degree murder in her statement of reasons that I don't have any further explanation of why it was what but this court has found that you can that you relying on the statement of reasons you can affirm. And again, this is for clear error. And as the this court said in Horton, that's a highly deferential standard in this case. During this interesting hearing, weren't several witnesses called? There were five witnesses called. Yes. Yes. And interestingly, Miss Rose, who was the block captain, who somehow has a relationship with the police who actually called 911 has no dog in this fight at all. She actually testified that one of the shots at the woman. By the defendant was shot, was fired before she even reached for the gun. So, I mean, there's there's plenty of evidence in the record to support the district court's finding that second degree murder, attempted second degree murder was the proper crime to be cross referenced. Unless the court has any further questions, we just urge you to affirm the sentence. Thank you. Thank you. I'll be brief as well. I just wanted to address the plain error issue. I did file a few days ago a response to that. And and I did find some authority that while it usually is the appellant who has this issue of waiving an issue not raised below, the government also can do that. And I cited some authority as far as the standard of review. I do ultimately think it is this court's decision, probably like a jurisdictional matter, that ultimately you have to apply the correct standard of review. But I would point out that the government initially conceded that this issue did not raise, that the issue wasn't raised below. And I think because it does involve a new case that is a not it's not changing the law. It's not a substantive change in the law. But then Mr. Ashford could get the benefit of that because it did identify in this circuit how the cross-reference and relevant conduct would interact with each other. And we assert that it's not plain error for those reasons. Thank you. Thank you. We will ask the courtroom deputy to adjourn court. Sonny Dye will come down and greet counsel.
judges: Allyson K. Duncan, Albert Diaz, Clyde H. Hamilton